THOMAS RICHARDSON *vs.* PRESIDENT, DIRECTORS, &c. OF
THE WASHINGTON BANK.
SAME *vs.* SAME.

A. had several loans from a bank, at different times, on notes indorsed by B for his
accommodation, and at the times when two of those loans were obtained, he lodged
collateral security, which he agreed might be applied to the payment of any sum that
he had obtained or might obtain on loan or discount from the bank : The bank made
collections on the collateral security, and applied them in part payment of the notes
that were discounted when such security was lodged, and then recovered judgments for
the balance of those notes, in suits against B., the indorser, and satisfied those judg-
ments by levying executions on B.'s lands :   C. also recovered a judgment against
B., and sold, on execution, B.'s right to redeem the land levied on by the bank, and
then transferred the right, thus acquired, to D. :  After the judgments recovered by
the bank against B. were satisfied by said levies, the bank collected other sums on
the collateral security, and applied them towards payment of other notes indorsed by
B. and discounted for A. :  D. thereupon demanded that said sums should be applied
towards the discharge of the judgments of the bank against B., and brought a bill in
equity against the bank, to redeem the lands on paying only the balance which would
be due on the judgments after deducting those sums.  *Held*, that the bill could not be
sustained.

Two bills in equity to redeem two parcels of land in Boston.
The only material facts, as they were set forth in the bills, the
answers, and an agreed statement, were these :

In February 1839, the defendants recovered two judgments,
in this court, against John French, and levied executions, in
satisfaction thereof, on the parcels of land which the plaintiff, by
his bills, sought to redeem.  William P. Brown also recovered
a judgment against said French, and after the levies of the de
fendants' said executions, levied the execution, which issued on
his said judgment, upon French's right to redeem the lands levied
upon, as aforesaid, by the defendants, and received from the
officer a deed of French's said right, pursuant to the Rev. Sts.
c. 73, § 48.  The right, which Brown thus acquired to the lands
in question, he duly transferred to the plaintiff, who filed these
bills within one year after Brown's said levy.

The aforesaid judgments, recovered by the defendants against
French, were founded on two promissory notes made by John
Thompson, payable to French, or his order, indorsed by French,

and discounted by the defendants for Thompson.    One of these notes was for $12,000, dated June 7th 1836 ; the other for $3000, dated October 21st 1836.    When the defendants made loans to Thompson by discounting these notes, he lodged other promissory notes as collateral security for payment of the same : And when the note for $3000 was discounted for him, he executed the following agreement :    " Be it known, that I the subscriber for and in consideration of three thousand dollars, this day loaned, on my obligation indorsed by John French, by the Washington Bank, have sold, and do hereby sell, assign, and transfer unto the President, Directors and Company of said bank, a note signed by G. W. Lewis favor H. & W. Lincoln, Oct. 18th 1836, 4 months, for $2500, and Eli Robbins's note favor J. Tremlette, Sept. 22d 1836, in ninety days, for $793·75, with full power to retain the same, as collateral security, on the following conditions, viz :    That for the punctual payment of this or any other sum which I have obtained, or may hereafter obtain, on loan or discount from said bank, these notes are hereby pledged and made liable ; and the directors of said bank are hereby authorized, after said loan or loans have become due and payable, and shall remain unpaid, to sell the said notes or any part thereof, either at public or private sale, and after deducting the amount due the bank, to place the balance, if any, to my credit on their books, subject to my order.    Provided, that after the full payment of said loan or loans, the said President, Directors and Company shall, on demand, retransfer to me the said notes, if not sold for the causes aforesaid.    Boston, Oct. 21st 1836.    JOHN THOMPSON."

An agreement, containing the same terms as to the collateral security, was also executed by Thompson, when the $12,000 note was discounted for him.

On the 23d of May 1838, Thompson entered into a sealed agreement with the defendants, in which — after stating that he was indebted to them in large sums on his promissory notes, upon some of which John French was indorser, surety, or guarantor, and that he had transferred, as security for payment of those notes, certain other notes, drafts and securities — he

authorized the defendants to hold all those notes, drafts and securities, as collateral security for all the notes which he owed to the defendants, and upon which said French was in any way liable, and to collect and apply the proceeds of such collateral securities to the payment of the notes on which French was liable as aforesaid.  It was also a part of this agreement, that the defendants should not be under any obligation to delay or omit to collect of Thompson or of French the notes due from them ; and that, as soon as those notes should in any way be paid or satisfied, the residue of said collateral security, and the proceeds thereof, should belong to said French, and should be delivered to him by the defendants, to repay him what he might pay to the defendants as indorser, &c. of Thompson, and to indemnify him against other liabilities incurred by him for Thompson.

Before the defendants took judgment on the $ 12,000 note abovementioned, they had collected $ 5326·97, on the notes lodged with them by Thompson as collateral security when that note was discounted, and deducted that amount on making up judgment.  They had also collected on the collateral security that was lodged when the $ 3000 note was discounted, the sum of $ 793·75, (the amount of E. Robbins's note,) which was deducted from that note on making up the judgment in the suit thereon.  French defended the suit on the $12,000 note, on the ground that the defendants had received payment thereof, in full, from Thompson, by way of the collateral security or otherwise ; but this defence failed.

After the defendants had taken judgment in said suits, they received, on said collateral security, $ 613·24, which they applied towards payment of another note for $ 4000, signed by Thompson and French jointly, and discounted by the defendants for Thompson, in 1833 ; and also $ 2536·03, (on G. W. Lewis's note,) which they applied towards payment of other demands which they held against Thompson for money lent to him on notes indorsed by French.

The plaintiff denied the defendants' right thus to apply the money received after said judgments were made up, and insisted that it should have been applied to the discharge of those judgments *pro tanto.*

The cases of *Washington Bank* v. *Lewis & Lincoln*, 22 Pick. 24, were made part of the defendants' answers to the bills.

*B. Rand & Dexter*, for the plaintiff.

*Cooke*, for the defendants.

WILDE, J.* These suits depend on the same principles, and have been argued together. Both are founded on the Rev. Sts. *c.* 73, § 24, and were brought for the purpose of redeeming several parcels of land taken and set off to the defendants on execution, as the property of one John French. The judgments, on which the executions issued, were recovered on notes of hand given by one John Thompson, and indorsed by the said French. After the levy of said executions, the right in equity of French to redeem said lands was taken in execution and sold at public auction to one Brown, and by him, before this suit was commenced, was duly assigned to the plaintiff. It appears that at the time this note was taken by the defendants, on a loan made to Thompson, certain other promissory notes were pledged to the defendants, by said Thompson, as collateral security for the payment of said notes indorsed by said French, and other notes due from said Thompson to the defendants. It is also agreed that after the defendants recovered judgment against French, they collected a further sum on one of said collateral securities, which they have applied towards payment of certain notes of Thompson, indorsed by French, due to them, but in no part towards the payment of said judgment against French. And the plaintiff insists that the defendants were bound by the principles of equity to apply the money collected towards payment of the said judgment. Whether they were thus obligated, is the general question submitted to the determination of the court.

The plaintiff's claim is founded on the equitable rights of French, who, having been compelled to pay the debt of Thompson, was entitled, as is contended, to the notes pledged by him to the defendants to secure the payment of that debt.

---

* The chief justice did not sit in these cases.

That a surety, who has been compelled to pay the debt of the principal, is entitled for his indemnity to the property pledged, or the collateral security therefor given, by the principal to the creditor, is a well established and familiar rule of equity. This rule is not founded on any contract or stipulation to that effect between the parties, but on natural justice and equity. A surety, therefore, cannot maintain his right to be substituted in the place of the creditor, unless, from the circumstances of his case, his claim be founded on substantial justice.

In the present case, it appears by an agreement with the defendants, under the signature of Thompson, that the notes pledged were transferred to the bank as collateral security for the punctual payment of the note on which judgment was rendered against French, or *any other sum which* Thompson *had obtained, or might thereafter obtain,* on loan or discount from said bank. *And the directors of the bank were authorized to* sell the securities pledged, and to apply the proceeds to the payment of said loans, after they should become payable and remain unpaid. It has been argued, that the construction of this agreement, or conditional transfer, is not clear and obvious. But, as it seems to us, the intention of the parties is manifest. The notes pledged were given as collateral security for all loans which had been, or might thereafter be obtained. This is the express language and the obvious meaning of the transfer, and no other construction can be given to it.

It was, however, further argued, that if the notes were pledged to secure all loans, yet the defendants were bound first to apply the money collected therefrom to the payment of the loan obtained at the time the security was given. But the language of the contract cannot be construed so as to give any priority or preference to any particular loan or debt. It does not appear that it was the intention of the parties to give any priority or preference to any particular loan ; nor do we perceive any motive that they can be presumed to have had for so doing. Nor is there any rule of law or equity by which the defendants were bound to appropriate the moneys collected on the collateral security to the payment of one loan rather than another.

The general rule is, that when there are several debts, the debtor may direct to which debt any payment shall be applied ; and if he fails to give any direction, then the election devolves on the creditor. In the present case, no such direction was given by Thompson, nor indeed by French. He, however, had no right to give any direction. We think therefore that the defendants had an undoubted right to apply the moneys, collected on the collateral securities, in the manner they have done ; and that neither the principal nor the. surety has any right now to alter the appropriations made by the defendants in pursuance of their rights under the contract. The surety has no right by way of substitution ; for if the principal has now no right to direct the appropriation of the moneys collected by the defendants, *a fortiori* the surety has not ; for he certainly cannot impair their rights under the contract with the principal, made *bonâ fide*, at the time of the loan in question. If the defendants had afterwards colluded with the principal and had given up the security, then indeed the surety would have been discharged, or would have been entitled to the benefit of the. security thus fraudulently given up. But this is not pretended. To entitle a surety to be substituted in the place of the creditor, he must pay the whole of the debt he is bound to pay ; a payment of part is not sufficient. So the rule is laid down by Lord Eldon. *Ex parte Rushforth*, 10 Ves. 420. The principle of substitution gives to the party substituted the rights of an assignee. The surety therefore cannot compel the creditor to assign the security, unless he first pays all he is bound to pay. If he does not, the creditor still has a right to retain the pledge for his own security and benefit.

This rule of equity applies to the present case. French is still responsible on other notes, for the security of which the pledge was given. And it makes no difference in equity, whether he is responsible on one or several notes. The defendants have a right to hold the collateral security until all the notes are paid, for the payment of which French is responsible ; and to him it is immaterial on which of the notes the money received by the defendants was indorsed : or rather, it was im-

material before the sale of the equity to Brown. But since that sale, and since his right of redemption has been barred by lapse of time, he became interested. His interest, however, was and still is opposed to the plaintiff's claim.

But supposing French had a right of substitution, and was entitled to stand in the place of the creditors, and to direct the appropriation of the collateral security ; we should then be brought to the consideration of the second ground of equity on which the defendants' counsel relies. The question is, what equity does the case show in favor of the plaintiff. He has none certainly in his own right, for he purchased with a full knowledge of all the facts. His only claim is through the medium of Brown and French. That he has all the rights which Brown had, in relation to the premises, is true ; but what were Brown's rights ? He was not a surety, and has paid nothing for Thompson, the principal debtor. If he had any claim, therefore, on the defendants, he must have derived it through the medium of French, by the purchase of his equity of redemption. But that clearly gave him no right to claim any benefit of the security in which French and the defendants only were interested. At the time Brown purchased the equity, the defendants had received the money in dispute, and had indorsed it on a note for the payment of which French was responsible ; and French alone could question that appropriation. If this claim had been disclosed at the time of the sale, and the purchaser had relied on it, he would undoubtedly have been entitled to the right of French, if any he had ; but it does not appear that any such disclosure had been made. It is therefore to be presumed as a fact, that none such was made, and that the right purchased by Brown was the right to redeem the estate by paying the amount of the execution and interest. Upon what ground of equity then can the plaintiff, in his own right, or in the right of French, claim any interest in the collateral security in question ? The claim is not only without equity, but is against equity ; and if it could be enforced, it would operate most unjustly, either against the defendants, or against French. For if the plaintiff's claim should be allowed, French, if he is

solvent, would have to pay the note in full, on which the amount is now indorsed ; and if unable to pay, the loss must fall on the defendants. And besides ; French's right of redemption is barred, so that he has no remedy whereby he can be indemnified.

The plaintiff's claim is very much like that set up in the case of *Green* v. *Kemp*, 13 Mass. 515. The tenant in that case had purchased the mortgagor's right in equity to redeem a mortgage, and in an action by the mortgagee to recover possession, he claimed the right to impeach and defeat the title of the mortgagee, on the ground that the mortgage was made on a usurious consideration ; and it was argued by the counsel for the tenant, that it might be that he purchased the premises on the ground that the mortgage was void, and that the consideration paid might have been enhanced by his knowledge of, and reliance upon, that fact. But the court held clearly that he had no right to question the validity of the mortgage, as he had purchased no right but the right to redeem it, and that he had not acquired the mortgagor's right to avoid the mortgage on the ground of usury. It was truly said, " that the principle contended for by the tenant's counsel would serve to encourage fraud and injustice, rather than to restrain the taking of excessive usury." The injustice of the present claim is equally apparent. The plaintiff seeks to appropriate to his own use and benefit the proceeds of the collateral security, which the defendants have appropriated according to their contract with their principal debtor, and in which appropriation the surety has acquiesced, and whose interest it is to confirm it, if any confirmation were necessary. Under these circumstances, it seems very clear that in whatever aspect the case may be viewed, no ground of equity appears on which these bills can be sustained.

*Bills dismissed.*